UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY E. FERGUSON, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 1:16-cv-00489-DBH |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of returning to his past relevant work as a bagger or, in the alternative, performing other work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge (i) failed to find his left eye amblyopia a severe impairment at Step 2, (ii) ignored opinion evidence from Rose Mary Porter-Fetterman, M.Ed., Jason Merrin, Ph.D., Psy.D., Ryan C. Gallant, MOT, OTR/L, and state caseworker Anne Wheeler, (iii) erred in assessing his credibility, and, (iv) as a result of those errors, arrived at a residual functional capacity ("RFC") determination unsupported by substantial evidence. *See* Plaintiff's Statement of Errors

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 15, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

("Statement of Errors") (ECF No. 11) at 4-20. I conclude that the administrative law judge failed to consider, let alone address, evidence that the plaintiff's restrictions were greater than those she assessed, calling into question her credibility/RFC determinations and warranting remand. Accordingly, I recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018, Finding 1, Record at 60; that he had severe impairments of learning disorder and anxiety disorder, Finding 3, *id.*; that he had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he had a limitation in concentration, persistence, and pace with the ability to understand, remember, and carry out simple tasks and was limited to object-oriented tasks with only occasional superficial work-related interactions with supervisors, coworkers, and the general public, Finding 5, *id.* at 62; that he was capable of performing past relevant work as a bagger, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 68; and, in the alternative, considering his age (41 years old, defined as a younger individual, on his amended alleged disability onset date, November 8, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were other jobs existing in significant numbers in the national economy that he could perform, *id.* at 69; and that he, therefore, had not been disabled from November 8, 2013, through the date of the decision, September 25, 2015, Finding 7, *id.* at 70. The Appeals Council declined to review the decision, *id.* at 1-4, making

the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff worked part-time for Hannaford Brothers ("Hannaford"), initially as a bagger and then as a cashier, for 14 and a half years, quitting on October 25, 2013, as a result of anxiety

caused by increasing conflict with a difficult supervisor who had overseen his work since 2005. *See* Record at 93-94,104-05. He alleged disability beginning on November 8, 2013. *See id*. at 58. He testified that he had received vocational rehabilitation support during the entire time he worked at Hannaford and "had a job coach who would come in and help me deal with issues, and I had quite a lot of issues." *Id*. at 93. He explained that his job coach would come into Hannaford to advocate for him with the supervisor because he was too intimidated and nervous to speak with her. *See id*. at 105-06. He testified that he would not have been able to remain at Hannaford as long as he did without the job coach's assistance. *See id*. at 105.

The plaintiff further testified that Hannaford received a tax credit for hiring him and that he was not able to learn product codes as quickly as other cashiers. *See id*. at 106-107. He testified that it took at least "a few months" longer for him to learn those codes than others, "because the more I entered it in the more they would get in there because a lot of repetition's good for me because I can get it in my brain and understand it and remember it." *Id*. at 107.

The administrative law judge stated that she "considered but granted little probative weight to the [plaintiff's] testimony." *Id*. at 67. She found, *inter alia*, that he had "been able to work with a learning disorder for many years without significant difficulty[,]" "he apparently was able to deal with a particular manager since 2005 despite his difficulties[,]" "[t]he record indicates that vocational rehabilitation was having a difficult time placing [him] due to his self-imposed restrictions for limited daytime hours, close geographical proximity, certain tasks, and non-stressful positions[,]" and he "testified that he had a job coach when he was working, but the record does not reflect this allegation." *Id*. at 66.

She stated that, in assessing the plaintiff's RFC, she gave "substantial evidentiary weight" to the opinions of agency examining consultant Edward Quinn, Ph.D., dated February 11, 2014,

4

and agency nonexamining consultants Brian Stahl, Ph.D., and Leigh Haskell, Ph.D., dated February 24, 2014, and July 24, 2014, respectively, but "minimal weight" to a mental impairment questionnaire of treating counselor Sean Douglas, LCSW, dated August 18, 2015. *See id*. at 68, 185-87, 201-03, 906-09, 956-60. She summarized:

> The [plaintiff] has received minimal conservative and routine treatment. Clinical findings do not suggest a more restrictive functional capacity than that assessed in this decision. The [plaintiff's] activities of daily living belie the severity of his impairments. [He] has received vocational rehabilitation services, but the record suggests self-imposed resistance to opportunities for other employment. The opinions that have been afforded substantial weight are consistent with the record. The [plaintiff's] allegations are not entirely credible because they are not supported by the evidence of record to the extent they suggest a more restrictive [RFC] than found above.

*Id*. at 68.

As the plaintiff points out, *see* Statement of Errors at 4-5, 8-17, the administrative law judge never mentioned the July 1998 psychological evaluation of Porter-Fetterman, a licensed psychological examiner and certified school psychological service provider, the October 19, 2011, statement of caseworker Wheeler, the August 3, 2011, evaluation of occupational therapist Gallant, or the February 1, 2012, neuropsychological evaluation of Dr. Merrin, a licensed psychologist, *see id*. at 60-70, 739, 764-73, 774-84, 815-18.

The plaintiff cites *Bickford v. Barnhart*, 242 F. Supp.2d 39, 42 (D. Me. 2002), for the proposition that the failure to mention these evaluations and the Wheeler report warrants remand. *See* Statement of Errors at 8; *Bickford*, 242 F. Supp.2d at 42 (because administrative law judge did not mention Veterans Administration ("VA") records that contained medical opinions supporting VA physicians' conclusion that he suffered a 60 percent disability and was unemployable due to back pain, "it is not possible to determine whether the administrative law judge complied with 20 C.F.R. § 404.1527(d), which requires the commissioner to evaluate every medical opinion

5

received"; noting that the VA records were "not necessarily consistent on their face with a functional capacity for light work[,]" which the administrative law judge had found the claimant capable of performing).

The commissioner concedes that, although an administrative law judge need only develop a medical history for the 12 months prior to a claimant's alleged onset date of disability, he or she must consider all of the evidence in the record. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 6 (citing 42 U.S.C. § 423(d)(5)(B)).

However, she contends that the administrative law judge did consider the evidence at issue, as demonstrated by its inclusion in the List of Exhibits appended to the decision and her reference to Exhibit 18E, containing the Merrin and Gallant evaluations. *See* Opposition at 4-5, 8-10, 13, (citing Social Security Administration, Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-1-20; *Chapman v. Colvin*, No. 1:16-cv-00231-JDL, 2016 WL 7441609, at *3 (D. Me. Dec. 26, 2016) (rec. dec., *aff'd* Feb. 10, 2017)).

In the alternative, she argues that:

1.  The administrative law judge had no obligation to consider (i) the Porter-Fetterman evidence because it predated the plaintiff's alleged onset date of disability by more than 15 years, and the plaintiff engaged in substantial gainful activity ("SGA") in the intervening time, or (ii) the remaining evidence because it predated the alleged onset date and the plaintiff was actually engaging in SGA when it was created. *See id.* at 5-6, 9-11, 14 (citing *Nelson v. Colvin*, No. 1:15-cv-00450-JAW, 2016 WL 4059149, at *3 (D. Me. July 29, 2016) (rec. dec., *aff'd* Aug. 26, 2016), *appeal docketed*, No. 16-2236 (1st Cir. Oct. 5, 2016); *Kenney v. Colvin*, No. 2:13-cv-296-GZS, 2014 WL 3548986, at *5 n.2 (D. Me. July 17, 2014); *Henderson v. Astrue*, Civil No. 08-167-P-H, 2009 WL 214569, at *4 (D. Me. Jan. 27, 2009) (rec. dec., *aff'd* Feb. 19, 2009)).

6

2. Any error in failing to address the evidence at issue was harmless because the administrative law judge's credibility and RFC determinations are supported by substantial evidence, and consideration of the evidence at issue would have made no difference. *See id*. at 9-12, 14-20.

In *Chapman*, this court recognized that the inclusion of evidence in a List of Exhibits creates a presumption that an administrative law judge considered that evidence. *See Chapman*, 2016 WL 7441609, at *3 (agreeing with counsel for the commissioner that, in view of HALLEX's direction that exhibit lists be prepared in cases involving partially or wholly adverse decisions to comply with "the constitutional due process requirement that a claimant has the right to know upon what bases the ALJ [administrative law judge] is making the decision in his/her case[,]" one can presume that the listed evidence was considered) (quoting HALLEX § I-2-1-20). While the court held that inclusion in the List of Exhibits was adequate evidence of its consideration, it did not hold that it was conclusive. *See id*.

The plaintiff rebuts that presumption in this case. Although the administrative law judge summarized evidence postdating the plaintiff's onset date of disability in detail, she made virtually no reference to evidence predating it. *See* Record at 60-68. She did note that the plaintiff had been "a client of Bureau of Rehabilitation Services – DVR for a number of years." *Id*. at 63 (citing, *inter alia*, Exhibit 18E). Yet, tellingly, although Exhibit 18E contains DVR records for the period from August 3, 2011, through December 5, 2013, including the Merrin and Gallant evaluations, *see id*. at 74, she discussed only one specific record within it: the December 5, 2013, assessment, the sole record postdating the plaintiff's alleged onset date of disability *see id*. at 63-64.

Most strikingly, as the plaintiff emphasized in her statement of errors and through counsel at oral argument, the administrative law judge made a finding that she could not have made if she

7

had carefully reviewed the earlier materials: that the plaintiff's testimony that he had a job coach when he was working was not reflected in the record. *See id*. at 66. To the contrary, in her October 9, 2011, letter, caseworker Wheeler verified that the plaintiff "has been receiving job coaching through Vocational Rehabilitation since 2008 to support him at his part-time job." *Id*. at 739.[3]

The administrative law judge seemingly consciously ignored evidence predating the plaintiff's alleged onset date, including the Porter-Fetterman, Gallant, Merrin, and Wheeler evidence. She provided no explanation for why she had done so. *See id*. at 60-68.

To the extent that the commissioner contends that the administrative law judge had no obligation even to consider this evidence because it predated the plaintiff's alleged onset date and reflected his condition during a period in which he was engaging in SGA, *see* Opposition at 5-6, 9-11, 14, she misreads the authorities on which she relies. *Kenney* did not concern a failure to consider record evidence,[4] and *Nelson* and *Henderson* merely concluded that, in the circumstances presented, an administrative law judge's failure to consider/discuss certain evidence was harmless.[5]

---

[3] At oral argument, counsel for the commissioner suggested that the administrative law judge correctly found that the plaintiff did not require a job coach to assist in performing his job duties at work. However, the administrative law judge found that the plaintiff's *testimony* regarding the job coach was not corroborated by the record. *See* Record at 66. As noted above, the plaintiff did not testify that he required a job coach to assist in performing his job duties but, rather, to come to Hannaford from time to time to help mediate conflicts with his supervisor. *See id*. at 93-94, 105-06.

[4] In the cited passage of *Kenney*, the court rejected a claimant's challenge to an administrative law judge's finding that a treating physician's RFC opinion was unsupported by objective evidence of her back impairment. *See Kenney*, 2014 WL 3548986, at *5. The court noted that the claimant's counsel had agreed at oral argument that the objective findings on which the claimant relied did not reveal a worsening of her condition after her alleged onset date of disability. *See id.* The court added that the commissioner had correctly observed that at least one of the records on which the claimant relied was generated prior to her alleged onset date, during a time when she was doing heavy or very heavy work. *See id*. at *5 n.2.

[5] *See Nelson*, 2016 WL 4059149, at *3 (disregard of five additional years of counseling records did not establish that decision was unsupported by substantial evidence when administrative law judge had reviewed multiple years of recent counseling records from same provider and had plainly considered the claimant's mental health issues, and the records at issue were generated while the claimant was engaging in SGA); *Henderson*, 2009 WL 214569, at *5 (claimant's citation to records predating her alleged onset date by several years did not refute administrative law judge's conclusion that she failed to pursue recommended counseling and psychiatric treatment, which was supported by evidence from relevant period).

As the commissioner elsewhere concedes, *see* Opposition at 6, an administrative law judge is obligated to consider all evidence of record, *see, e.g.*, 42 U.S.C. § 423(d)(5)(B) ("In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record[.]"). *See also, e.g.,* Social Security Ruling 06-03p ("SSR 06-03p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016), at 328 ("[W]hen we make a determination or decision of disability, we will consider all of the available evidence in the individual's case record. This includes, but is not limited to, objective medical evidence; other evidence from medical sources, including their opinions; statements by the individual and others about the impairment(s) and how it affects the individual's functioning; information from other 'non-medical sources' and decisions by other governmental and nongovernmental agencies about whether an individual is disabled or blind.").

The administrative law judge failed to do so in this case.

I turn to the final question: whether the error was harmless. I conclude that it was not.

First, the administrative law judge cannot be said to have taken the evidence at issue into account indirectly through reliance on the opinions of experts who did consider it. Dr. Quinn did not indicate that he reviewed any records, *see* Record at 906-09, and Drs. Stahl and Haskell did not indicate that they reviewed any of the records on which the plaintiff relies, *see id*. at 181-82, 198.

Second, as the plaintiff argues, *see* Statement of Errors at 10-13, 15-17, the evidence that the administrative law judge ignored can be reasonably construed to support greater limitations than she assessed, aligning this case with *Bickford*.

9

The question of the manner in which the plaintiff performed his part-time job at Hannaford was material to whether he could return to his past relevant work as a bagger, both as he actually performed it and as it is generally performed, *see* Record at 69, and to whether he could perform other work existing in substantial numbers in the national economy, *see id*. at 69-70.

The administrative law judge erroneously discounted his testimony that he "had a job coach who would come in and help me deal with issues," for instance, advocating for him with his difficult supervisor, *id*. at 93, 105-06, on the basis that it was unsupported by the record, ignoring Wheeler's statement that the plaintiff had had a job coach since 2008 and that:

> [The plaintiff] needs assistance with overall communication. Due to his disability, he is very concrete in his thinking and is sometimes offended by other[s'] comments including coworkers and supervisors. This is probably the area where he needs the most support. [His] perception and interpretation of events is often quite different from [those of] others who were also present. His job coach has also sometimes assisted [him] with hygiene issues.

*Id*. at 739. As the plaintiff points out, *see* Statement of Errors at 18, his use of a job coach in the manner to which he testified is further corroborated by emails between his employer and caseworker documenting issues at work and at-work meetings between the plaintiff and his supervisor attended by his job coach, *see, e.g., id*. at 440-41, 445, 497-99.

The administrative law judge likewise ignored findings of Gallant and Dr. Merrin bearing on the plaintiff's social functioning and need for assistance at work. Gallant found that the plaintiff would benefit from "long-term support from an employment specialist to assist him with handling" workplace conflict issues "as they occur" and that "[h]aving a supportive supervisor will also be important, as this will likely play a significant factor in his job satisfaction/success." *Id*. at 773.

Dr. Merrin found that the plaintiff "is likely to be introverted, to have difficulty forming close relationships, and to be emotionally restricted" and that he "reports disliking people and being around them, and is likely to be asocial." *Id*. at 780. He observed that the plaintiff's "hygiene

was poor and he was not clean, while his clothing looked disheveled." *Id*. at 776. He recommended that the plaintiff might want to work with a professional in activities of daily living who "could help teach him about hygiene, money management, appropriate appearance and behavior, etc." *Id*. at 783.

While the administrative law judge did find deficits in the plaintiff's social functioning, restricting him to only occasional superficial work-related interactions with supervisors, coworkers, and the general public, *see* Finding 5, *id*. at 62, she did not find that he required a job coach or other support person to assist as needed with social conflicts at work and/or with hygiene issues or that he required a supportive supervisor.

Her failure to provide a full and fair consideration of this point was not harmless error. As the plaintiff points out, *see* Statement of Errors at 13, 15, the vocational expert present at his hearing testified that an individual's inability to sustain competitive standards of cleanliness would preclude employment, as would an inability to meet competitive standards for interacting with supervisors and coworkers, *see* Record at 121. The vocational expert further testified that a job coach who comes to an individual's place of work is an accommodation. *See id*. at 124.[6]

The plaintiff also testified that he required more time than others to learn job skills, noting, for example, that it had taken him at least a few months longer than others to memorize product

---

[6] The commissioner contends that, because the plaintiff did not challenge the administrative law judge's Step 2 finding that he engaged in SGA through November 8, 2013, he has waived any argument that he required a job coach to perform the Hannaford job, or any job. *See* Opposition at 15-16; Finding 2, Record at 60; 20 C.F.R. §§ 404.1573(c), 416.973(c) ("If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity."). At oral argument, the plaintiff's counsel explained that her client did not contest the SGA finding because he did not want to "double dip," meaning, as I understand it, that he did not seek to obtain disability benefits for any period during which he had job earnings. However, she reiterated that he worked at Hannaford with the assistance of a job coach or the services of DVR. I find no waiver of the plaintiff's assertion that he required/requires a job coach or other work-support services, a point that, as the commissioner acknowledges, *see* Opposition at 15, he repeatedly raised in his statement of errors, *see* Statement of Errors at 2, 15-19.

codes at Hannaford. *See id*. at 107. This testimony was supported by findings of Porter-Fetterman, Gallant, and Dr. Merrin, all of which the administrative law judge ignored.

Porter-Fetterman found that the plaintiff had "[w]eaknesses . . in auditory short-term memory and any motor task that required eye-hand coordination or tasks that needed to be completed in a set amount of time." *Id*. at 816-17. She noted, "Working under time constraints creates more stress for [the plaintiff] in addition to taxing his weaker visual processing capabilities." *Id*. at 817. She stated that, as a result of the plaintiff's weaknesses in auditory short-term memory, "[i]t appears that he needs repeated exposure to material he is to remember and will not be able to remember what is said to him when he is confronted with more than simple directions." *Id*.

Gallant found that the plaintiff appeared to benefit from "visual cues to assist him with recalling information" and "repeated exposure and increased familiarity" and that he might "work at a slightly slow work pace" and need assistance "with goal setting and follow through[.]" *Id*. at 770, 772. He stated that "[i]ndividuals working with [the plaintiff] should remember that when processing sensory information he has a low registration style[,]" explaining that "[t]his means that he may need information presented to him in a multi-stimuli manner, such as being told the directions, given a demonstration, and allowing him to try it himself." *Id*. at 772. He added: "He will also benefit from having information reviewed with him periodically to insure he fully understands." *Id*.

Dr. Merrin concurred with Gallant that "[a]t work and school [the plaintiff] may need assistance with time management, planning, organizing, giving him extra time to complete tasks, and giving him concrete instructions" and that "[h]e may need directions given to him auditorally, visually, and then allow him to learn through trial and error." *Id*. at 783-84.

While the administrative law judge found deficits in the plaintiff's concentration, persistence, or pace, limiting him to understanding, remembering, and carrying out simple tasks and to object-oriented tasks, *see* Finding 5, *id*. at 62, she found no limitation in the pace at which he acquired new information even as to simple tasks. Her failure to provide a full and fair consideration of this point was not harmless error. As the plaintiff points out, *see* Statement of Errors at 10-11, the vocational expert present at his hearing testified that, if one assumed that it took the plaintiff a month longer than other employees to learn the skills of a new job, that would rule out all unskilled work, *see* Record at 123. The vocational expert added that the longer the period past 30 days it took an individual to learn a new job, the smaller number of unskilled jobs there would be. *See id*. at 124.

As the commissioner notes, *see* Opposition at 9-10, 12, 16-20, there is evidence of record supporting the administrative law judge's credibility and RFC determinations: for example, the opinions of Drs. Quinn, Stahl, and Haskell. Absent recognition of conflicts in the evidence and resolution of the same, however, the court cannot determine whether her decision is supported by *substantial* evidence, requiring remand. *See, e.g., Soto v. Secretary of Health & Human Servs.,* 795 F.2d 219, 222 (1st Cir. 1986) ("We are ill-equipped to sort out a record that admits of conflicting interpretations. Accordingly, we believe the case must be remanded. . . . The Secretary may take additional evidence on remand, and is not obliged to accept the results of claimant's IQ tests if there is a substantial basis for believing that claimant was feigning the results. If the Secretary does reject the test results on this basis, however, he should state his reasons for doing so.") (footnote omitted); *Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the

determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of June, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge